# EXHIBIT 1

Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 2 of 25 PageID #: 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

------------------------------------------------------------------X

JAMES CHECCA,

                              Plaintiff,

-against-

ARTHREX, INC., POLARIS TECHNOLOGY
SOLUTIONS, LLC, AND
JOHN DOE 1 (fictitious name),


                          Defendant(s).

------------------------------------------------------------------X

Index No.:
Date purchased: April 28, 2025

**SUMMONS**

Plaintiff designates Nassau County
as the place of trial

The basis of venue is the plaintiff's
residence: 26 Glen Cove Drive,
Glen Head, NY 11545

**To the above-named Defendants:**

      **You are hereby summoned** to answer the Complaint in this action, and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiff's attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty (30) days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: West Islip, New York
April 28, 2025

                                         Yours, etc.,
                                         **KELLY & GROSSMAN, LLP**

                                         Dennis Kelly, Esq.
                                         *Attorneys for Plaintiff*
                                         1248 Montauk Highway
                                         West Islip, New York 11795
                                         Telephone: (314) 314-4996
                                         Facsimile: (516) 686-6771

FILED: NASSAU COUNTY CLERK 04/28/2025 04:44 PM INDEX NO. 609062/2025
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 04/28/2025
Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 2 of 25 PageID #:

1

Case 2:25-cv-02393-RPK-ST Document 1-2 Filed 04/29/25 Page 3 of 25 PageID #: 12

TO:

ARTHREX, INC.
1370 Creekside Boulevard
Naples, Florida 34108-1945

POLARIS TECHNOLOGY SOLUTIONS, LLC
222 Westbury Ave, Carle Place,
New York, 11514.

JOHN DOE 1 (fictitious name)

2

Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 4 of 25 PageID #: 13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-------------------------------------------------------------X

JAMES CHECCA,

                       Plaintiff,

-against-

ARTHREX, INC., POLARIS TECHNOLOGY
SOLUTIONS, LLC, AND
JOHN DOE 1(fictitious name),

                       Defendant(s).

-------------------------------------------------------------X

Index No.:

**VERIFIED COMPLAINT**

The Plaintiff, by his attorneys, KELLY & GROSSMAN, LLP, complaining of Defendants, respectfully alleges, upon information and belief, as follows:

### PARTIES AND BACKGROUND

1. At all times herein mentioned, the Plaintiff JAMES CHECCA was, and still is, a natural person residing in the State of New York.

2. At all times herein mentioned, Defendant ARTHREX, INC. (hereinafter "ARTHREX") was or represented itself as a global medical device company authorized to conduct business in the State of New York, incorporated in the State of Delaware and maintains a principal place of business at 1370 Creekside Boulevard, Naples, Florida 34108-1945.

3. At all times herein mentioned, Defendant ARTHREX is a foreign business entity doing business in the State of New York.

4. At all times mentioned, Defendant ARTHREX is a foreign business entity company authorized to do business in the State of New York.

3

Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 5 of 25 PageID #: 14

5. At all times relevant hereto, Defendant ARTHREX is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Florida and is conducting, and has regularly conducted, business in the State of New York.

6. POLARIS TECHNOLOGY SOLUTIONS, LLC, (hereinafter "POLARIS") was or represented itself as an authorized independent sales and distribution agency representing ARTHREX, INC. POLARIS is a limited liability corporation that is incorporated in the State of New York and with their principal place of business located at 222 Westbury Ave, Carle Place, New York, 11514.

7. Defendant John Does 1, whose name is currently not known to the Plaintiff, shall be sought through discovery of this matter. Defendant John Does 1 is or was a POLARIS employee and was the contracted ARTHREX representative present during Mr. Checca's first surgery referenced herein.

8. Venue is proper in this Court as the Defendants conduct business in New York and their commercial activities therein include, but are not limited to, the sale of ARTHREX medical implant and equipment, including the following: REF NO. AR-9090-05S, NAIL INTRAMEDULLARY DUALCOMP HINDFOOT 11.5 X 180MM LOG NO. 4869658 LOT NO. 15258104 (hereinafter "Dualcomp Implant"), REF. NO. AR-9091-02 HINDFOOT NAIL CABLE TENSIONER LOT NO. 78422413 (hereinafter "Tensioner"). Venue is also proper in this district because a substantial part of the events or omissions giving rise to the Plaintiff's claims against the Defendants occurred in Nassau County. Additionally, Plaintiff is domiciled in Nassau County within the State of New York, and Defendant POLARIS maintains its principal place of business in Nassau County within the State of New York.

4

Case 2:25-cv-02393-RPK-ST     Document 1-2     Filed 04/29/25     Page 6 of 25 PageID #: 15

9. ARTHREX is subject to this Court's jurisdiction because, at all times relevant hereto, ARTHREX regularly and continuously did business in the State of New York by manufacturing, selling, and distributing reconstructive orthopedic implants, including, but not limited to, the Dualcomp Implant, the Tensioner and orthopedic surgical products used by orthopedic surgeons in the State of New York.

10. At all times herein mentioned, Defendant ARTHREX placed products, including the Dualcomp Implant and Tensioner, into the stream of commerce that were sold or resold in the State of New York.

11. At all times herein mentioned, Defendant ARTHREX conducted business in the State of New York.

12. At all times herein mentioned, Defendant ARTHREX does or solicits business or derives substantial revenue from goods used in the State of New York.

13. At all times herein mentioned, Defendant ARTHREX does or solicits business or substantial revenue from interstate commerce.

14. At all times herein mentioned, Defendant ARTHREX does or solicits business or substantial revenue from international commerce.

15. At all times herein mentioned, Defendant ARTHREX expected or should reasonably have expected its actions, including the placement of its products into commerce, including the Dualcomp Implant and the Tensioner, would have consequences outside of Florida.

16. At all times herein mentioned, Defendant ARTHREX expected or should reasonably have expected its actions, including the placement of its products into commerce, including the Dualcomp Implant and the Tensioner, would have consequences in the State of New York.

5

Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 7 of 25 PageID #: 16

17. At all times herein mentioned, Defendant ARTHREX had sales representatives marketing and selling ARTHREX products including the Dualcomp Implant and the Tensioner, in the State of New York.

18. At all times herein mentioned, Defendant ARTHREX was, in the business of designing, manufacturing, constructing, assembling, inspecting, and selling various types of surgical devices, including the Dualcomp Implant and the Tensioner.

19. POLARIS is subject to this Court's jurisdiction because, at all times relevant hereto, POLARIS regularly and continuously did business in the State of New York by, selling, and distributing reconstructive orthopedic implants, including, but not limited to, the Dualcomp Implant and the Tensioner, and orthopedic surgical products used by orthopedic surgeons in the State of New York.

20. At all times herein mentioned, Defendant POLARIS placed products, including the Dualcomp Implant and the Tensioner, into the stream of commerce that were sold or resold in the State of New York.

21. At all times herein mentioned, Defendant POLARIS conducted business in the State of New York.

22. At all times herein mentioned, Defendant POLARIS does or solicits business or derives substantial revenue from goods used in the State of New York.

23. At all times herein mentioned, Defendant POLARIS expected or should reasonably have expected its actions, including the placement of its products into commerce, including the Dualcomp Implant and the Tensioner, would have consequences outside of Florida.

6

Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 8 of 25 PageID #: 17

24. At all times herein mentioned, Defendant POLARIS expected or should reasonably have expected its actions, including the placement of its products into commerce, including the Dualcomp Implant and the Tensioner, would have consequences in the State of New York.

25. At all times herein mentioned, Defendant POLARIS had sales representatives marketing and selling ARTHREX products, including the Dualcomp Implant and the Tensioner, in the State of New York.

26. At all times herein mentioned, Defendant POLARIS was in the business of selling various types of surgical devices, including the Dualcomp Implant and the Tensioner.

27. Upon information and belief, the Arthrex products: the Dualcomp Implant [REF NO. AR-9090-05S, NAIL INTRAMEDULL ARY DUALCOMP HINDFOOT 11.5 X 180MM  LOT NO. 15161138] and the Tensioner [REF. NO. AR-9091-02 HINDFOOT NAIL CABLE TENSIONER LOT NO. 78422413] were entered into the stream of commerce.

28. The nature of this dispute involves a defectively designed and manufactured Dualcomp Implant and the Tensioner. A Dualcomp Implant was implanted in James Checca, which was defective and causing him extreme pain, and ultimately, corrective surgery was required.

29. After sustaining an injury to his right leg, James Checca was presented to NYU Langone for imaging. The X-ray revealed that his bone was millimeters breaking through his skin. Dr. Megan Chapter Zylinski, M.D., told Mr. Checca that if his bone comes through his skin, she will have to amputate his leg and advised that immediate surgery was necessary.

30. On September 24, 2024, at NYU Langone Long Island located at 259 1st St, Mineola, NY 11501 (hereinafter "1st Surgery". James Checca underwent a left tibial calcaneal

7

arthrodesis, removal of hardware, and achilles tenotomy surgeries under general anesthesia.

31. The surgeon, in the course of the surgery, utilized ARTHREX's Dualcomp Implant and Tensioner.

32. A POLARIS representative, Joe Doe 1, was present during James Checca's 1st Surgery.

33. During James Checca's 1st Surgery, after being prepped, under anesthesia and ready for the ARTHREX Dualcomp Implant. The Dualcomp Implant jammed and was visibly defective. The surgeon requested a replacement device, the POLARIS employee, agent for ARTHREX, John Doe who was present did not have a replacement Dualcomp Implant nor could he find another Dualcomp Implant as required to successfully complete James Checca's 1st Surgery.

34. The surgeon decided to place the defective ARTHREX Dualcomp Implant into James Checca and had to schedule him for corrective surgery. James Checca was advised not to place weight on the operated ankle until his corrective surgery was completed.

35. On September 27, 2024, James Checca had his corrective left tibial calcaneal arthrodesis, in which the DualComp Implant was removed and a different manufacturer's device was implanted. Mr. Checca underwent this second corrective surgery at NYU Langone Long Island, located at 259 1st St, Mineola, NY 11501 (hereinafter "2nd Surgery"). He had the defective ARTHREX Dualcomp Implant removed and replaced with the following: an ENOVIS FOOT AND ANKLE IMPLANT [NAIL IM 12MM X 22 CM DYNANAIL – LOG NO. 4878427 LOT NO. D0106C], ENOVIS FOOT AND ANKLE SCREWS [SCREW BN 5MM 90MM DYNANAIL PA HDLS – LOG NO. 4878427 LOT NO.04914A], [ SCREW BN 5MM 50MM

8

DYNANAIL CORT HD- LOG NO. 4878427 LOT NO. C6240A], ISTO BIOLOGICS [ALLOGRAFT

FIBER CORT 10CC INFLUX- SOB24-0161], and DJO SURGICAL SCREWS [SCREW BN CMPRSN

CORT HEADED PA 5 X 30MM- LOG NO. 4878427 LOT NO. C6259], [SCREW BN CMPRSN

CORT HEADED PA 5 X 30MM- LOG NO. 4878427 LOT NO. C6264]

**AS AND FOR A FIRST CAUSE OF ACTION:**
**STRICT PRODUCTS LIABILITY: DEFECTIVE DESIGN**

36. The Plaintiff repeats and re-alleges each and every allegation of this Complaint as if set forth in full in this cause of action.

37. The Defendants had a duty to use reasonable care to design a product that is not unreasonably dangerous to users.

38. At all times relevant to this action, the Defendants designed, tested, manufactured, packaged, labeled, marketed, distributed, promoted, and sold ARTHREX products, placing the devices into the stream of commerce.

39. At all times relevant to this action, the ARTHREX products were designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied, and/or distributed by the Defendants in a condition that was defective and unreasonably dangerous to consumers, including Plaintiff.

40. The ARTHREX products are defective in their design and/or formulation in that they are not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with their design and formulation.

9

41. The ARTHREX products were expected to reach, and did reach, users and/or consumers including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which they were manufactured and sold.

42. The surgeon implanted the device as instructed and in a foreseeable manner as normally intended, recommended, promoted, and marketed by the Defendants. Plaintiff received and utilized the ARTHREX products in a foreseeable manner as normally intended, recommended, promoted, and marketed by the Defendants.

43. The ARTHREX products were and are unreasonably dangerous in that, as designed, failed to perform safely when used by ordinary consumers, including Plaintiff, including when the Dualcomp Implant and Tensioner were used as intended and in a reasonably foreseeable manner.

44. The ARTHREX products were and are unreasonably dangerous and defective in design or formulation for their intended use in that, when they left the hands of the manufacturers and/or supplier, they posed a risk of serious orthopedic and other serious injury which could have been reduced or avoided, inter alia, by the adoption of a feasible reasonable alternative design. There were safer alternative designs for the like products.

45. The ARTHREX products were insufficiently tested and caused harmful adverse events that outweighed any potential utility.

46. The ARTHREX products, as manufactured and supplied, were defective due to inadequate warnings, and/or inadequate clinical trials, testing, and study, and inadequate reporting regarding the results of the clinical trials, testing, and study.

10

47. The ARTHREX products as manufactured and supplied by the Defendants are and were defective due to inadequate post-marketing warnings or instructions insofar as after the Defendants knew or should have known of the risk of injuries from use and acquired additional knowledge and information confirming the defective and dangerous nature of its ARTHREX products, the Defendants failed to provide adequate warnings to the medical community and the consumers, to whom the Defendants were directly marketing and advertising; and further the Defendants continued to affirmatively promote their Arthrex Dualcomp Implant and Tensioner as safe and effective.

48. That as a result of the foregoing, the Plaintiff has been damaged and requires sums sufficient to compensate him for the damages he has suffered and such amount exceeds the jurisdictional limits of all limits of all lower courts which might have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION:
## STRICT PRODUCTS LIABILITY: MANUFACTURING DESIGN

49. The Plaintiff repeats and re-alleges each and every allegation of this Complaint as set forth in full in this cause of action.

50. The said products were defective and unreasonably dangerous when the Defendants manufactured them and placed them into the stream of commerce.

51. The ARTHREX products reached the intended patients, handlers, and physicians without substantial change in their condition as designed, manufactured, sold, distributed, and marketed by the Defendants. The Defendants were involved in the retail distribution and promotion of the products to consumers.

11

52. The defects in the ARTHREX products were a proximate cause of the injuries suffered by the Plaintiff and the damages thereby incurred.

53. The ARTHREX products were defective in design and manufacture and were unreasonably dangerous to an extent that which the ordinary consumer would contemplate.

54. The ARTHREX products were defective in design and manufacture and the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

55. The defects in the ARTHREX products were a substantial and contributing factors in causing the Plaintiff's injuries and, but for the Defendant's misconduct and omissions, the Plaintiff would not have sustained injuries.

56. By engaging in the said conduct, the Defendants have become strictly liable to Plaintiff, pursuant to applicable New York State Law.

57. Said conduct of the Defendants was so willful, wanton, malicious, reckless, and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages.

58. That as a result of the foregoing, the Plaintiff has been damaged and requires sums sufficient to compensate him for the damages he has suffered and such amount exceeds the jurisdictional limits of all lower courts which might have jurisdiction.

**AS AND FOR A THIRD CAUSE OF ACTION:**
**STRICT PRODUCTS LIABILITY: FAILURE TO WARN**

59. The Plaintiff repeats and re-alleges each and every allegation of this Complaint as set forth in full in this cause of action.

12

Case 2:25-cv-02393-RPK-ST Document 1-2 Filed 04/29/25 Page 14 of 25 PageID #: 23

60. The ARTHREX products were defective and unreasonably dangerous when they left the possession of the Defendants in that they contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risks associated with the subject product, including but not limited to the risk of failing to function as intended which are associated with and did cause serious injury.

61. Information provided by the Defendants to the medical community and to consumers concerning the safety and efficacy of its ARTHREX products did not accurately reflect the serious and potentially fatal adverse events Plaintiff could suffer.

62. At all times relevant hereto, the ARTHREX products were dangerous and presented a substantial danger to patients who were implanted with the ARTHREX products, and these risks and dangers were known or knowable at the times of distribution and implantation in Plaintiff. Ordinary consumers would not have recognized the potential risks and dangers the ARTHREX products posed to patients, because their use was specifically promoted to improve health of such patients.

63. The Defendants failed to provide warnings of such risks and dangers to Plaintiff and his medical providers as described herein. Neither Plaintiff, nor Plaintiff's physicians knew, nor could they have learned through the exercise of reasonable care, the risks of serious injury and/or death associated with and/or caused by the ARTHREX products.

64. The Defendants knew or had knowledge that the warnings that were given failed to properly warn of the increased risks of serious injury and/or death associated with and/or caused by the ARTHREX products.

13

Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 15 of 25 PageID #: 24

65. Plaintiff, individually and through their implanting physicians, reasonably relied upon the skill, superior knowledge, and judgment of the Defendants.

66. As a direct and proximate result of the ARTHREX defective products, as described herein, the Plaintiff suffered permanent and continuous injuries, pain and suffering, disability and impairment. The Plaintiff has suffered emotional trauma, harm, and injuries that will continue. Plaintiff also incurred both past and future medical bills related to care as a result of ARTHREX defective products.

67. By reason of the foregoing, the Defendants are liable to the Plaintiff for damages as a result of its failure to warn and/or adequately warn the Plaintiff and healthcare professionals about the increased risk of serious injury caused by its defective ARTHREX products.

68. As a result of the foregoing, the Plaintiff has been damaged and requires sums sufficient to compensate him for the damages he suffered and such amount exceeds the jurisdictional limits of all lower courts which might have jurisdiction.

## AS FOR A FOURTH CAUSE OF ACTION:
### NEGLIGENCE

69. The Plaintiff repeats and re-alleges each and every allegation of this Complaint as set forth in full in this cause of action.

70. At all times relevant to this cause of action, the Defendants were in the business of designing, developing, manufacturing, marketing and selling sophisticated medical devices, including its Dualcomp Implant and Tensioner.

14

71. At all times relevant hereto, the Defendants were under duty to act reasonably to design, develop, manufacture, market and sell a product that did not present a risk of harm or injury to the Plaintiff and to those people receiving their ARTHREX products.

72. At the time of manufacture and sale of the ARTHREX products, the Defendant knew or reasonably should have known that the Dualcomp Implant and the Tensioner were designed and manufactured in such a manner so as to present an unreasonable risk of failure.

73. Despite the aforementioned duty on the part of the Defendants, they committed one or more breaches of their duty of reasonable care and were negligent in unreasonably and carelessly failing to properly warn of dangers and risks of harm associated with the ARTHREX product, the Dualcomp Implant, and the Tensioner.

74. As a direct and proximate result of the ARTHREX defective products, as described herein, the Plaintiff suffered permanent and continuous injuries, pain and suffering, disability and impairment. The Plaintiff has suffered emotional trauma, harm, and injuries that will continue. Plaintiff also incurred both past and future medical bills related to care as a result of ARTHREX defective products.

75. By reason of the foregoing, the Defendant are liable to the Plaintiff for damages as a result of their failure to warn and/or adequately warn the Plaintiff and healthcare professionals about the increased risk of serious injury and death caused by its defective ARTHREX products.

15

76. As a result of the foregoing, the Plaintiff has been damaged and requires sums sufficient to compensate him for the damages he suffered and such amount exceeds the jurisdictional limits of all lower courts which might have jurisdiction.

### AS AND FOR FIFTH CAUSE OF ACTION:
### BREACH OF EXPRESS WARRANTIES

77. The Plaintiff repeats and re-alleges each and every allegation of this Complaint as set forth in full in this cause of action.

78. At all relevant times to this action, ARTHREX was a merchant of goods of this kind, including the Dualcomp Implant and Tensioner.

79. At the time and place of sale, distribution and supply of ARTHREX products to Plaintiff (and to other consumer and medical community), the Defendant expressly represented and warranted in their marketing materials, both written and orally, and in the information for use that the ARTHREX products were safe, well-tolerated, efficacious, and fit for their intended purpose and were of marketable quality, that they did not produce any unwarned-of dangerous side effects, and that they were adequately tested.

80. At the time of Plaintiff's purchase from the Defendants, the ARTHREX products were not in merchantable condition, and the Defendants breached their expressed warranties.

81. As a direct and proximate result of the ARTHREX defective products, as described herein, the Plaintiff suffered permanent and continuous injuries, pain and suffering, disability and impairment. The Plaintiff has suffered emotional trauma, harm, and injuries that will continue. Plaintiff also incurred both past and future medical bills related to care as a result of ARTHREX's defective products.

16

82. By reason of the foregoing, the Defendants are liable to the Plaintiff for damages as a result of their breach of express warranty.

83. As a result of the foregoing, the Plaintiff has been damaged and requires sums sufficient to compensate him for the damages he suffered and such amount exceeds the jurisdictional limits of all lower courts which might have jurisdiction.

**AS AND FOR SIXTH CAUSE OF ACTION:**
**BREACH OF IMPLIED WARRANTIES**

84. The Plaintiff repeats and re-alleges each and every allegation of this Complaint as set forth in full in this cause of action.

85. At all relevant and material times, the Defendants manufactured, distributed, advertised, promoted, and sold its ARTHREX products.

86. At all relevant times, the Defendants intended its Dualcomp Implant and Tensioner be used in the manner that Plaintiff in fact used it.

87. The Defendants impliedly warranted their ARTHREX Dualcomp Implant and Tensioner to be of merchantable quality, safe and fit for the use for which the Defendants intended them and for which Plaintiff in fact used them.

88. The Defendants breached their implied warranties in that they failed to:

a) provide the warning or instruction and/or an adequate warning or instruction which a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that its ARTHREX products would cause harm;

b) The Defendants manufactured and/or sold their ARTHREX products and said products did not conform to representations made by the Defendants when they left the Defendant's control;

17

Case 2:25-cv-02393-RPK-ST   Document 1-2   Filed 04/29/25   Page 19 of 25 PageID #: 28

c) The Defendants manufactured and/or sold their ARTHREX products, which were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the ARTHREX product design or formulation exceeded the benefits associated with that design. These defects existed at the time the products left the Defendant's control; and

d) The Defendants manufactured and/or sold their ARTHREX products when they deviated in a material way from the design specifications, formulas, or performance standards, and these defects existed at the time the products left the Defendant's control.

89. Further, the Defendant's marketing of their ARTHREX products was false and/or misleading.

90. Plaintiff, through their attending physicians, relied on these representations in determining which of the Dualcomp Implant and the Tensioner to use for implantation in the Plaintiff.

91. The Defendant's ARTHREX products were unfit and unsafe for use by users as they posed an unreasonable and extreme risk of injury to person using said products, and accordingly the Defendant breached its expressed warranties and the implied warranties associated with the product.

92. The foregoing warranty breaches were a substantial factor in causing Plaintiff's injuries and damages as alleged.

93. As a direct and proximate result of the ARTHREX defective products, as described herein, the Plaintiff suffered permanent and continuous injuries, pain and suffering, disability and impairment. The Plaintiff has suffered emotional trauma, harm, and injuries that will

18

Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 20 of 25 PageID #: 29

continue. Plaintiff also incurred both past and future medical bills related to care as a result of ARTHREX defective products.

94. By reason of the foregoing, the Defendant are liable to the Plaintiff for damages as a result of their breach of implied warranty.

95. As a result of the foregoing, the Plaintiff has been damaged and requires sums sufficient to compensate him for the damages he suffered and such amount exceeds the jurisdictional limits of all lower courts which might have jurisdiction.

### AS AND FOR SEVENTH CAUSE OF ACTION:
### VIOLATIONS OF APPLICABLE STATE LAW PROHIBITING CONSUMER FRAUD
### AND UNFAIR AND DECEPTIVE TRADE PRACTICES
### (N.Y. Gen. Bus. Law §349, *et seq.*)

96. The Plaintiff repeats and re-alleges each and every allegation of this Complaint as set forth in full in this cause of action.

97. The Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and promotion of the ARTHREX products to Plaintiff.

98. The Defendants engaged in unfair, unconscionable, deceptive, fraudulent, and misleading acts or practices in violation of New York consumer protection laws, identified below.

99. Through its false, untrue and misleading promotion of the ARTHREX products, the Defendants induced Plaintiff to purchase and/or pay for the purchase of the ARTHREX products.

100.     The Defendants misrepresented the alleged benefits and characteristics of ARTHREX products; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of the ARTHREX products; misrepresented the quality and efficacy of the ARTHREX products as compared to lower-cost alternatives;

19

misrepresented and advertised that the ARTHREX products were of a particular standard, quality, or grade that they were not; misrepresented the ARTHREX products in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiff would have opted for an alternative surgical methods.

101.    The Defendant's conduct created a likelihood of, and in fact caused, confusion and misunderstanding. The Defendant's conduct misled, deceived, and damaged the Plaintiff. The Defendant's fraudulent, misleading, and deceptive conduct was perpetrated with an intent that Plaintiff rely on said conduct by purchasing and/or paying for purchases of the ARTHREX products. Moreover, the Defendants knowingly took advantage of Plaintiff, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of the ARTHREX products.

102.    The Defendant's conduct was willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiff and offends the public conscience.

103.    Plaintiff purchased the ARTHREX products primarily for personal, family, or household purposes.

104.    As a result of the Defendant's violative conduct in New York State, Plaintiff purchased and/or paid for purchases of the ARTHREX products that were not made for resale.

105.    The Defendants engaged in unfair competition or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

20

106.    That as a result of the foregoing, the Plaintiff has been damaged and requires sums sufficient to compensate him for the damages he suffered and such amount exceeds the jurisdictional limits of all lower courts which might have jurisdiction.

107.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7)(as Defendants acted with reckless disregard), (10)(product liability),(11) (as Defendants acted knowingly or intentionally, and in concert).

108.    That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendant herein, and in that Defendant was vicariously responsible for any possible additional parties with liability herein.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against the Defendants on each of the above-referenced claims and as follows:

1.  Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to, pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2.  Awarding economic damages in the form of medical expenses, out-of-pocket expenses, and other economic damages in an amount to be determine at trial of this action;

3.  Punitive and exemplary damages as may be deemed appropriate but this Court upon the submission of evidence at trial to the extent allowed by appliable law;

4.  Pre-judgment interest;

21

Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 23 of 25 PageID #: 32

5. Post-judgment interest;

6. Awarding Plaintiff reasonable attorney fees;

7. Awarding Plaintiff the costs of these proceedings; and

8. Such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

The Plaintiff hereby demands trial by jury as to all the issues.

Dated: West Islip, New York
April 28, 2025,

Yours, etc.,
**KELLY & GROSSMAN, LLP**

Dennis Kelly, Esq.
*Attorneys for Plaintiff*
1248 Montauk Highway
West Islip, New York 11795
Telephone: (314) 314-4996
Facsimile: (516) 686-6771

TO:

ARTHREX, INC.
1370 Creekside Boulevard
Naples, Florida 34108-1945

POLARIS TECHNOLOGY SOLUTIONS, LLC
222 Westbury Ave, Carle Place,
New York, 11514.

JOHN DOE 1 (fictitious name)

22

Case 2:25-cv-02393-RPK-ST    Document 1-2    Filed 04/29/25    Page 24 of 25 PageID #: 33

## ATTORNEY VERIFICATION

DENNIS KELLY, being duly sworn, deposes and says that he is counsel for the Plaintiff JAMES CHECCA and makes this verification pursuant to CPLR Rule 3020(d)(3). The Plaintiff is not within the county where deponent has his office. Deponent has read the foregoing Verified Complaint and knows the contents thereof; that the same is true on the basis of information and belief, based upon books and records in the possession of deponent, and conversations with Plaintiff.

Dated: West Islip, New York
April 28, 2025

Dennis Kelly, Esq.
KELLY & GROSSMAN, LLP

23

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

------------------------------------------------------------------------X

JAMES CHECCA,

                                 Plaintiff(s),

    -against-

ARTHREX, INC., POLARIS TECHNOLOGY SOLUTIONS, LLC,
AND JOHN DOES 1-10 (fictitious names),

                               Defendant(s).

------------------------------------------------------------------------X

## SUMMONS AND COMPLAINT

### KELLY & GROSSMAN, LLP

1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996
Facsimile: (516) 686-6771

*Pursuant to 22 NYCRR 130.1.1, the undersigned, and attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.*

*Dated:  April 28, 2025*                *Signature:* _____

                                            *Print Name: Dennis Kelly, Esq.*

Service of a copy of the within SUMMONS AND COMPLAINT is hereby admitted

Dated:                      _____

                               Attorney(s) for Plaintiff

*PLEASE TAKE NOTICE*
    [ ]    *that the within is a (certified) true copy of a        entered in the*
               *Office of the clerk of the within names court on*
    [ ]    *that the        of which the within is a true copy will be presented for*
               *Settlement to the Hon.        , one of the judges of the within names court, on*

Dated: